IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TINA BROWN,                          :        Civil No.  1:24-CV-1855
                                     :
          Plaintiff,                 :
                                     :
     v.                              :        (Magistrate Judge Carlson)
                                     :
FRANK BISIGNANO,                     :
Commissioner of Social Security      :
                                     :
          Defendant.                 :

## MEMORANDUM OPINION

## I.    Introduction

The ability to ambulate without assistance is often a key component to employment. Therefore, when ambulation is impaired, it follows that the ability to work is undermined. Social Security regulations recognize this basic truth and specifically contemplate that the "requirement to use a hand-held assistive device may . . . impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). Thus, the issue of whether a claimant requires an assistive device to ambulate is one that can be outcome determinative in disability cases. For this reason, an Administrative Law Judge's (ALJ) decision eschewing a claimant's need to use an assistive device must

1

be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

We are reminded of these guiding tenets of Social Security practice as we turn to this case. The plaintiff, Tina Marie Brown, alleges an onset of her disability in April 2022, shortly after she was hospitalized for complications from her uncontrolled diabetes. (Tr. 402). Indeed, the record indicates that Brown's uncontrolled diabetes was the root cause of an array of medical impairments from which she suffered, including gastroparesis and polyneuropathy. The plaintiff alleges that, following her April 2022 hospitalization, she began experiencing neuropathy throughout her body which caused heaviness and numbness in her feet resulting in balance issues and frequent trips and falls. Because of this, she testified at the hearing that she must use a walker at all times. (Tr. 725). Brown's need to use a walker at all times was also reinforced by the consultative examiner who examined Brown in July 2022 and concluded she required a walker to ambulate and that a walker was medically necessary due to her neuropathy. (Tr. 731). Brown's statements, and the opinion of the only source who actually examined the plaintiff, were cast against the internally inconsistent opinions of the non-examining, non-treating State agency medical consultants who concluded Brown's use of an assistive device was not supported and that she was capable of light work. Yet these sources

2

also indicated that more evidence was required to evaluate Brown's use of a walker, with one of the agency experts noting that the consultative examination raised questions with regard to the duration of Brown's neuropathy symptoms and the use of her walker and recommending "serial TP exams," to determine if Brown's diabetic neuropathy would meet the duration necessary to be considered a severe impairment. (Tr. 70).

Against this backdrop, the ALJ concluded that the longitudinal medical records did not indicate a medical necessity for Brown's use of a walker to ambulate. The ALJ referenced, without citing to any part of the record, objective clinical findings showing "good range of motion and ability to move around" and noted that the walker was not prescribed. The ALJ rejected the opinion of the only examining source stating her opinion was inconsistent with the same vaguely referenced examination findings showing "good range of motion and ability to move around," and credited the opinions of the non-examining, non-treating sources but failed to acknowledge their statements that more evidence was needed with regard to Brown's walker use. Moreover, while the ALJ and state agency experts referenced a paucity of evidence of her walker use, the plaintiff indicated that her need for a walker only began in April 2022, after which point her primary care provider and the consultative examiner both indicated a medical need for a walker.

In our view, the ALJ erred in failing to develop the record on the issue of Brown's walker use by failing to acknowledge statements by the State agency consultants that more information was needed and by rejecting the evidence of the medical necessity of Brown's walker, including the consultative examiner report, notes form her primary care provider, and Brown's own statements. This error now compels the remand of this case. Indeed, in similar circumstances we have held that when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for their need for an assistive device, a remand is warranted. See Wolabaugh v. Bisignano, No. 4:24-CV-1989, 2026 WL 561225, at *1 (M.D. Pa. Feb. 27, 2026); Stahurski v. O'Malley, No. 3:22-CV-1807, 2024 WL 3204243, at *1 (M.D. Pa. June 27, 2024); Jordan v. Kijakazi, No. 1:21-CV-01975, 2023 WL 2616099 (M.D. Pa. Mar. 23, 2023); Dieter v. Saul, No. 1:19-CV-1081, 2020 WL 2839087 (M.D. Pa. June 1, 2020). Accordingly, for the reasons set forth below, we will remand this case for further consideration by the Commissioner.

## II.    Statement of Facts and of the Case

Because we have determined that a remand is necessary due to the failure of the ALJ to account for Brown's use of an assistive device in the RFC assessment, we will focus exclusively upon this issue when assessing the record.

4

On April 21, 2022, Tina Marie Brown filed a claim for disability and disability insurance benefits (DIB) under Title II of the Social Security Act, alleging an onset of disability beginning on April 21, 2022. (Tr. 17). Brown was born on August 1, 1969, and was approximately 52 years old on the alleged date of the onset of her disability, (tr. 27), which was defined as an individual closely approaching advanced age under the Commissioner's regulations. 20 C.F.R. § Pt. 404, Subpt. P, App. 2. She has a high school education and previously worked as a cashier. (Tr. 26).

On her application for disability benefits, Brown alleged she was disabled due to neuropathy, diabetes type 1, high blood pressure, asthma, osteoarthritis, and gastroparesis. (Tr. 68). The clinical record with respect to her walker use is limited, but it shows she was hospitalized twice in early 2022 – in January and April – for uncontrolled diabetes. (Tr. 402, 569). During her April admission it was noted she was obese but had normal range of motion. (Tr. 408). Her discharge notes state her condition was suspected diabetic gastroparesis due to poorly controlled diabetes and she was placed on Reglan. (Tr. 409). At a May 2022 family medicine office visit, Brown reported being unable to attend work more than one to two days per week since February. (Tr. 363). She reported neuropathy throughout her body since starting Reglan during her April 2022 hospitalization and stated she had fallen due to balance issues as well as bilateral foot pain. (Tr. 326). She had wildly fluctuating

5

weights, with weight swings of approximately 100 pounds and her diabetes was uncontrolled. (Tr. 329). An examination showed arthralgias and myalgias but no gait problem. (Tr. 328). She was diagnosed with neuropathy and prescribed gabapentin. (Tr. 326).

On July 20, 2022, Brown was examined by consultative examiner Nurse Practitioner Christine Fahr. NP Fahr's report states Brown reported neuropathy since 2009 affecting her feet causing her to trip and fall. (Tr. 725). She stated that she used a walker at all times and that her feet felt very heavy like bricks. (Id.) Brown was using a walker during the exam and was unable to be assessed without the walker. (Tr. 727). The examination revealed she was unable to walk on heels and toes due to neuropathy, unable to get on and off the exam table, had 25% of full squat due to fear of falling and pain, and she was unable to perform a supine straight leg raise. (Id.) She also displayed an ataxic gait and had diminished sensation to pinprick from her ankle joints to the tips of her toes bilaterally and decreased strength in her lower extremities. (Id.) She reported needing help at home but being able to drive, cook three times a week, bathe and dress herself daily but that she did not clean, do laundry, shop, or engage in childcare. (Tr. 726).

At digestive health appointments in September and October 2022 it was noted that Brown was using a walker. (910, 923). By October 2022 her treating physician

noted she had been using a walker boot, had numbness in her foot, and needed help with some of her activities of daily living.[1] (Tr. 1087). Her provider referred her to physical therapy for idiopathic peripheral neuropathy and gait abnormality. (Tr. 1085, 1087). While her treating CRNP did not complete a medical source opinion, there is an application for a permanent handicapped placard in the record from December 2022 which her treating provider completed stating Brown could not walk 200 feet without stopping to rest. (Tr. 304-05).

For her part, Brown's function report explains that the primary reason she was limited in her ability to work was because she needed a walker to walk and had no strength in her legs. (Tr. 261). She stated she had to sit to dress, use a shower chair, and that she could not go out alone or drive because she could not feel her feet and had balance issues. (Tr. 264). Her function report also indicated that her walker was prescribed by a doctor. (Tr. 267). Brown's hearing testimony largely mirrored what

---

[1] It is also worth noting that Brown seemed to experience difficulties controlling her weight during this period. She was noted as obese in April 2022, weighing 173 pounds at five feet four inches tall. (tr. 408), but in May 2022 it was also noted she had lost approximately 100 pounds without explanation. (Tr. 327). At her consultative examination in July 2022, she weighted only 149 pounds. (Tr. 726). Less than one year later, in September 2023, however, she weighed 226 pounds with a BMI of 29. (Tr. 1133). The ALJ acknowledged Brown's obesity, finding it non-severe, but did not explain how her weight fluctuations could contribute to her ambulatory issues.

7

was stated in her function report. She testified that she uses a walker for neuropathy because of numbness in her feet. (Tr. 44). When asked by the ALJ if the walker was prescribed, Brown testified that she first started using it on her own but then the doctor prescribed another walker with a sit-down location on it, although ultimately they did not locate any prescription in the file and referenced only the handicapped placard application completed by her treating provider which indicated she could not walk 200 feet without stopping to rest. (Tr. 45). She testified that she always used a walker or she lost her balance very easily due to numbness and weakness in her feet. (Tr. 46). She testified to using a shower chair, having to sit on her walker to cook dinner, being unable to go up and down stairs, and being unable to drive due to numbness in her feet. (Tr. 49-50).

Despite Brown's statements regarding the medical necessity of her walker, and the objective medical evidence showing she experienced numbness in her feet and noting her use of a walker several times throughout 2022, the medical opinion evidence in this case was somewhat contradictory and cast the opinions of the non-treating, non-examining State agency experts against the opinion of the only consultative examiner who actually saw the plaintiff. Nonetheless, the consultative examiner who actually examined the plaintiff concluded that her walker was medically necessary.

On this score, on July 20, 2022, after examining the plaintiff, consultative examiner NP Fahr completed a medical source opinion of Brown's ability to perform work-related activity. In this report, NP Fahr opined that Brown required the use of a walker to ambulate, could not walk any distance without the walker, and that the walker was medically necessary due to her neuropathy. (Tr. 731). NP Fahr further opined that Brown could stand for up to four hours and walk for two hours total in an eight-hour workday and could only occasionally perform any postural activities except that she could never climb ladders or scaffolds, kneel, or crawl.[2] (Tr. 732-33).

Both State agency non-examining, non-treating sources who reviewed Brown's file considered the opinion of NP Fahr which concluded Brown's walker was medically necessary. At the initial level, in September 2022, Ethel Marie

---

[2] NP Fahr also opined that Brown could lift up to fifty pounds occasionally and twenty pounds frequently and could carry up to twenty pounds occasionally. (Tr. 730). The ALJ cited to this statement in concluding NP Fahr's opinion was unpersuasive since it is inconsistent with her walker use. While we acknowledge that the "requirement to use a hand-held assistive device may . . . impact on the individual's functional capacity by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4), we note that Brown's walker use was due to numbness in her lower extremities causing balance issues, which is supported by the examination findings of decreased sensation and strength in her lower extremities.

Hooper, MD, evaluated the opinion of consultative examiner Fahr and concluded that more evidence was needed. (Tr. 70). Specifically, Dr. Hooper noted that the consultative examination raised questions with regard to the duration of Brown's neuropathy symptoms and the use of her walker. (Id.) She also concluded that the CE raised issues with regard to her new musculoskeletal allegations, stating "all potential impairments will need to be developed," and recommended "serial TP exams," to determine if her diabetic neuropathy would meet the duration necessary to be considered a severe impairment. (Id.) Dr. Hooper's review of the medical evidence also highlighted notes in the medical record stating Brown used a walker, including the July 2022 consultative examination and September 2022 digestive health appointment. (Tr. 69-70).

Despite her evaluation concluding the consultative examination raised more questions than it answered, Dr. Hooper went on to conclude that the medical opinion of the consultative examiner was not supported by the totality of the evidence and an overestimate of the severity of Brown's symptoms. Dr. Hooper then opined that Brown was capable of light work, including standing and/or walking for a total of six hours in an eight-hour workday, occasionally lifting twenty pounds, and frequently lifting ten pounds. (Tr. 72-73). In her RFC determination, Dr. Hooper concluded that the use of an assistive device is not supported because she

demonstrated a normal gait with no assistive device before the consultative examination, and, despite the consultative examiner concluding Brown could not ambulate without the walker, "[t]here are no orthopedic notes no endocrinology notes no neurology notes no EMG no diabetic foot exam no PT no pain management notes to establish MDI or assess the severity of the impairment."[3] (Tr. 74).

On reconsideration, in March 2023, John Gerome Bertolino, MD, concluded the RFC opinion of Dr. Hooper, which indicated more evidence was necessary to reconcile the opinion of the consultative examiner with regard to the plaintiff's neuropathy and walker use with the record, was persuasive and consistent with the totality of the evidence. (Tr. 84). Dr. Bertolino's opinion also indicated potential gaps in the evidence of Brown's neuropathy, stating, "the allegation of neuropathy was alleged at the CE, however there are no comprehensive evaluation of sensation or vibration or proprioception by treating sources in evidence," though Dr. Bertolino acknowledged the consultative examiner noted diminished sensation from ankle joints to tips of toes bilaterally. (Tr. 83). But Dr. Bertolino ultimately concluded that

---

[3] In our view, this only highlights the need for further development of the record since it is clear that Brown's need for a walker coincided with the beginning of the disability period. Thus, it follows that, prior to the consultative examination which occurred only three months after the beginning of the disability period, there would be scant evidence of Brown's walker use.

the use of an assistive device was not supported since "the muscle weakness, while sometime associated with diabetes, is not consistent with other evaluations of muscle strength," despite the allegations that the plaintiff required a walker being directly related to her diabetic neuropathy and not strength. (Tr. 83-84). Dr. Bertolino then concluded Brown would be capable of light work including standing and/or walking for a total of six hours in an eight-hour workday, occasionally lifting twenty pounds, and frequently lifting ten pounds. (Tr. 82-85).

It was against the backdrop of medical opinions that either said a walker was medically necessary or that indicated more information was needed with regard to her walker use that the ALJ heard this case on September 27, 2023. (Tr. 34-59). At this hearing Brown and a Vocational Expert (VE) testified. (Id.) In her testimony Brown reiterated her need to use a walker to ambulate. (Tr. 44-50). A vocational expert also testified at the hearing and clearly stated that if Brown needed a walker to ambulate, she would be confined to sedentary work and could not perform the jobs identified in the ALJ's decision or her past work.[4] (Tr. 56-57).

---

[4] The ALJ did not question the VE about other jobs that existed in the national economy if Brown were limited to sedentary work, thus, all we know from the VE testimony is that she could not perform her past work or jobs at the light exertional level.

Following this hearing, the ALJ issued a decision denying Brown's claim on December 1, 2023. (Tr. 14-33). In that decision, the ALJ first concluded that Brown had not engaged in substantial gainful activity since her alleged onset date of disability, April 21, 2022, and that she met the insured status requirements of the Social Security Act through June 30, 2027. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Brown had the following severe impairment: diabetes mellitus. (Tr. 20). At Step 3, the ALJ determined that Brown's impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 22).

Between Steps 3 and 4, the ALJ concluded that Brown retained the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can lift and/or carry twenty pounds occasionally and ten pounds frequently; can sit, stand, or walk for six hours each per eight-hour workday; can occasionally perform postural activities; and cannot tolerate concentrated exposure to extreme cold, extreme heat, humidity, fumes, dusts, gases, odors, and poor ventilation.

(Id.)

13

This RFC determination made no provision for Brown's use of a walker, instead expressly rejecting the proposition that her walker was medically necessary. The ALJ explained:

> The longitudinal medical records do not indicate a medical necessity for the use of walker to ambulate. The objective clinical findings showed generally good ranges of motion and an ability to move around despite some extremity weakness and gait abnormality. However, the providers did not find the use of an assistive device for walking medically necessary, and the providers did not prescribe the walker that the claimant used as an assistive device. Further, the medical records showed medication compliance issues regarding diabetes medications, as well as fiber supplements, and the blood work showed elevated hemoglobin A1c percentage that was consistent with the providers noting a lack of diabetes medication compliance. However, the blood work showed improved hemoglobin A1c levels with consistent diabetes medication use. The treatment for pain was routine with Tylenol, ibuprofen, and gabapentin.

(Tr. 24-25). Thus, without citing to the record, the ALJ rejected the plaintiff's walker use because the records showed good range of motion and an "ability to move around." (Id.) The ALJ also noted that the plaintiff's ability to perform some activities of daily living did not support her allegations. (Tr. 25).

The ALJ then found the opinions of the non-treating, non-examining sources that Brown could perform light work persuasive and consistent with these same notes, to which he did not cite, showing "generally good ranges of motion and an ability to move around" but did not mention that Dr. Hooper stated the consultative

14

examination raised questions which needed resolved with regard to Brown's walker use. Nor did the ALJ expressly adopt or discuss these experts' opinions on Brown's use of a walker. The ALJ then rejected the opinion of consultative examiner NP Fahr, the only source who examined the plaintiff, stating that her opinion was based on the subjecting reporting of the claimant and a one-time examination and was inconsistent with the same reports of "generally good ranges of motion and an ability to move around." (Tr. 26). The ALJ did expressly reject NP Fahr's opinion that Brown's walker was medically necessary stating only that "Ms. Fahr's opinion that the claimant must use a walker is not supported by the medical evidence, which does not show a medical necessity for the use of a walker," and finding her opinion that Brown could carry twenty pounds occasionally and ten pounds frequently inconsistent with her opinion that she must use a walker. (Tr. 26).

Having concluded, based upon vague references to the record, that Brown's walker use was not medically necessary, but not acknowledging the clear gaps and inconsistencies in the records referenced by the opinions the ALJ found persuasive, and rejecting the opinion of the only source who examined the plaintiff that a walker was medically necessary, the ALJ then found that Brown could return to her past work as a cashier, (tr. 26-28), work which the VE testified she could not perform if

15

she required a walker to ambulate. Thus, the ALJ concluded Brown had not met the exacting standard of disability and denied her claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Brown argues, *inter alia*, that substantial evidence does not support the ALJ's RFC assessment because the ALJ failed to properly address her walker use in determining the RFC. We agree. Accordingly, we will remand this case for further consideration by the Commissioner.

## III.    Discussion

### A.    Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988).  Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not

substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v.

17

Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence.

18

Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

20

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1).  In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal

21

requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic

22

view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

23

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

It is against this backdrop that we evaluate the decision of the ALJ in this case.

### C.    This Case Will Be Remanded for Further Review.

On appeal, the plaintiff argues the ALJ failed to properly address her walker use in determining the RFC.

We agree.

Case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis. Accordingly, in certain instances, the

use of a walker to ambulate can be outcome determinative in a Social Security appeal.

At the outset, in order to rely upon evidence regarding the use of a walker to sustain a disability claim, the assistive device must be medically necessary. On this score:

> Social Security regulations provide that an ALJ will not accommodate the use of [an assistive device] unless the claimant first provides "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" SSR 96–9p. Absent such documentation, an ALJ need not accommodate the use of [an assistive device] in a residual functional capacity assessment, even if the claimant was prescribed a[n assistive device] by a doctor.

Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)).

However, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so may require a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ

25

warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive device on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for her need for a walker. See Dieter, 2020 WL 2839087, at *9. In such instances a remand may be necessary.

This requirement to address an established need for an assistive device is coupled with the ALJ's duty to develop the record and resolve inconsistencies and ambiguities which could render a decision of not disabled. On this score, while the burden "lies with the claimant to develop the record regarding [ ] her disability because the claimant is in a better position to provide information about [ ] her own medical condition," it is the ALJ's duty to eliminate evidentiary gaps that prejudice the claimant's case and resolve any material conflict or ambiguity in the evidence. Money v. Barnhart, 91 F. App'x 210, 215-16 (3d. Cir. 2004).

In this case, we find that the consultative examiner's opinion that Brown's walker was medically necessary due to her neuropathy, coupled with notes from her primary care physician that she had difficulty ambulating, at least met the threshold showing of medical necessity. Yet, the ALJ failed to adequately address the evidence

26

of the medical necessity of the walker and did not develop the record on the issue.

Simply put, in our view, evidentiary gaps and ambiguities abound in this case with

regard to the plaintiff's walker use and the ALJ failed to address these

inconsistencies and develop the record in at least two ways.

First, the ALJ concluded Brown's walker was not medically necessary, in

part, because it was not prescribed.[5] But the plaintiff testified that her walker was

prescribed and indicated so in her function report. (Tr. 44, 267). At the hearing, the

ALJ directly addressed the issue of whether the walker was prescribed, and it appears

the parties were unable to locate the prescription in the record but rather referenced

a parking placard completed in December 2022. (Tr. 45). But, rather than developing

---

[5] The ALJ's reliance on a prescription for the walker is also misplaced, since it is well-settled that, "[t]he standard described in SSR 96–9p does not require that the claimant have a prescription for the assistive device in order for that device to be medically relevant to the calculation of her RFC. Instead, she only needs to present medical documentation establishing the need for the device." Staples v. Astrue, 329 F. App'x 189, 191–92 (10th Cir. 2009). See also Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010), as amended on reh'g in part (May 12, 2010) ("Absurdly, the administrative law judge thought it suspicious that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist."); SEAN W., Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant., No. 20-CV-1653-FPG, 2022 WL 472570, at *3 (W.D.N.Y. Feb. 16, 2022); Krieger v. Comm'r of Soc. Sec., No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), report and recommendation adopted, No. 2:18-CV-876, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019).

the record on this issue, in the decision denying benefits, the ALJ concluded the walker was not prescribed, but did not address the plaintiff's testimony to the contrary. Given this ambiguity in the evidence, the ALJ was required to develop the record on the issue of the prescription of the walker before concluding it was not medically necessary.  See e.g. De Camacho v. O'Malley, 717 F. Supp. 3d 354, 368 (S.D.N.Y. 2024) ("First, [the plaintiff] testified that she had been 'prescribed' a cane by her doctor. (R.318.) Particularly given the absence of a medical record indicating that a cane had been prescribed, the ALJ had a duty to develop the record on that issue. . . . Whether or not [the plaintiff] had been prescribed a cane is a question of objective fact. It is not an issue of evaluating the claimant's credibility about the extent and limitations of her symptoms.")

The ALJ also erred in failing to address the inconsistencies and evidentiary gaps highlighted by the State agency expert opinions upon which he relied in concluding the plaintiff was capable of light work. On this score, while both Dr. Hooper and Dr. Bertolino concluded Brown was capable of light work, Dr. Hooper also stated that the consultative examination raised issues with regard to Brown's new musculoskeletal allegations and her use of a walker stating "all potential impairments will need to be developed," and recommended "serial TP exams," to determine if her diabetic neuropathy would meet the duration necessary to be

28

considered a severe impairment. (Tr. 70). On reconsideration, Dr. Bertolina stated that the RFC opinion of Dr. Hooper, which indicated more evidence was necessary to reconcile the opinion of the consultative examiner with regard to the plaintiff's neuropathy and walker use with the record, was persuasive and consistent with the totality of the evidence. (Tr. 84). Dr. Bertolino's opinion also indicated potential gaps in the evidence of Brown's neuropathy, stating, "the allegation of neuropathy was alleged at the CE, however there are no comprehensive evaluation of sensation or vibration or proprioception by treating sources in evidence," though Dr. Bertolino acknowledged the consultative examiner noted diminished sensation from ankle joints to tips of toes bilaterally. (Tr. 83). Given these statements by the experts showing clear evidentiary gaps and ambiguities that prejudiced Brown's case Money, 91 F. App'x at 216, the ALJ erred in failing to develop the record as indicated by these experts.[6]

---

[6] It is also worth noting that the ALJ did not mention these expert's opinions about Brown's walker use but appeared to impermissibly conclude that the walker was not medically necessary based upon his own lay interpretation of the record. See Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000) ("[An] ALJ cannot, . . ., disregard this medical opinion based solely on his own 'amorphous impressions, gleaned from the record.'"). Nonetheless, while the ALJ did not specifically mention his reliance on the statements of these experts in rejecting Brown's walker use, Dr. Bertolino did conclude that her use of an assistive device was not supported by the evidence.

Beyond the ALJ's failure to develop the record on the medical necessity of Brown's walker, the analysis also does not adequately articulate why the cited evidence indicates Brown does not need a walker. For example, the ALJ's summary includes examination findings of foot numbness, extremity weakness, and gait abnormality, but in rejecting Brown's statements and the opinion of the consultative examiner who examined the plaintiff, the ALJ relies upon examination findings of normal range of motion. But neither the plaintiff nor the consultative examiner cited range of motion as a reason the plaintiff needed a walker. In fact, it was the plaintiff's neuropathy, causing numbness and weakness in her feet, which caused her need for an assistive device. As far as the ALJ's reliance on clinical findings in the record showing Brown's general "ability to move," the ALJ has not explained the significance or origins of these clinical findings in the record. In fact, Brown's own statements about her general "ability to move" indicate she is unable to perform any of her activities of daily living without relying on her walker for support, (tr .44-50); the consultative examination revealed ataxic gait, inability to be assessed without the walker, inability to walk on heels and toes due to neuropathy, squat 25% of full due to fear of falling and pain, and inability to get on and off exam table, (Tr. 727); in May 2022 she reported to her primary care provider that she had fallen due to balance issues and bilateral foot pain, (Tr. 326); in October 2022 her treating

30

provider referred her for physical therapy due to a weakness and gait abnormality, (Tr. 1084-85, 1090); and in December 2022 her primary care provider indicated she could not walk 200 feet without stopping to rest. (Tr. 304-05). The ALJ left much of this evidence out of his analysis which concludes, without evidentiary support, that the record reflects a general "ability to move." Instead, the ALJ rejected the opinion of the only examining source that Brown could not ambulate without a walker based upon this same assertion that the record showed normal range of motion and that she had a general ability to move. While the ALJ attempted to justify discounting this medical consensus based upon his lay interpretation of the clinical evidence, this rationale is unpersuasive and unavailing. Rather, it is axiomatic that an "ALJ cannot, . . ., disregard this medical opinion based solely on his own 'amorphous impressions, gleaned from the record.'" Morales v. Apfel, 225 F.3d 310, 318 (3d Cir. 2000).

Moreover, the ALJ was not justified in relying on the opinions of the state agency consultants in concluding Brown's walker was not medically necessary. Although these experts did opine she was capable of light work, as previously explained, they also indicated that more evidence was necessary with regard to the medical necessity of Brown's walker. Thus, in our view, to the extent the ALJ relied on these opinions in concluding the walker was not medically necessary, this conclusion was misguided based on the opinions of these experts who seemed to

31

indicate that there were gaps and inconsistencies in the record which needed further development.

These errors on the part of the ALJ were clearly prejudicial since a Vocational Expert testified that the use of a walker would limit Brown to sedentary work, precluding her from her past employment. Moreover, the ALJ did not determine if other jobs existed at the sedentary level that Brown could perform. In fact, if Brown—a person who is closely approaching advanced age—was found to be able to only undertake sedentary work, the grids may have mandated a finding that she was disabled. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.12. Accordingly, the evidence that Brown's walker use was medically necessary was potentially outcome determinative. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4); SSR 96-9p. See also  Ubiles v. Berryhill, No. 15-CV-895-RJA-MJR, 2017 WL 4712208, at *6 (W.D.N.Y. Sept. 29, 2017), report and recommendation adopted, No. 1:15-CV-00895 (MAT), 2017 WL 4680492 (W.D.N.Y. Oct. 18, 2017) (citing Wright v. Colvin, No. 6:13-cv-6585(MAT), 2015 WL 4600287, at *5 (W.D.N.Y. July 29, 2015) ("If Plaintiff needs to use a cane for support and balance, that would mean at least one hand is are [sic] not free to hold other objects and perform the lifting and carrying requirements of light work, which are not minimal.").

In conclusion, more is needed here both to satisfy the ALJ's burden of articulation and the ALJ's duty to fully develop the record with regard to Brown's walker use. Accordingly, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand. Because we have found a basis for remand on these grounds, we need not address the plaintiff's remaining arguments since "[a] remand may produce different results on these claims, making discussion of them moot." Burns v. Colvin, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016).

## IV.    Conclusion

For the foregoing reasons the plaintiff's request for a new administrative hearing will be GRANTED, the final decision of the Commissioner denying these claims will be vacated, and this case will be REMANDED to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: April  15, 2026